IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN ALBRIGHT,<br>RICHARD NEWMAN, and<br>JACOB MULLINS<br><br>Plaintiffs,<br><br>v.<br><br>CONCURRENT TECHNOLOGIES<br>CORPORATION, CONCURRENT<br>TECHNOLOGIES CORPORATION<br>FOUNDATION, and ENTERPRISE<br>VENTURES CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:21-cv-00112-SLH<br><br>Judge Stephanie L. Haines<br><br>*Electronically Filed* |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

    A.   Identification of the Parties and Need for Dismissal of the CTC Foundation. ...... 1

    B.   Plaintiffs Are Subject to IP Agreements and Are At-Will Employees. ................. 2

    C.   The IP Manual Determines Awards ................................................................. 2

II.   FACTUAL BACKGROUND AS SET FORTH IN THE COMPLAINT ........................ 3

    A.   Plaintiffs' Employment with CTC ................................................................. 3

    B.   The TALON Invention ................................................................. 4

    C.   The IP Manual and IP Reward Program ................................................................. 4

    D.   Plaintiffs' Alleged Intentional Infliction of Emotional Distress ............................ 6

III.  LEGAL STANDARD ................................................................. 6

IV.   ARGUMENT ................................................................. 7

    A.   Plaintiffs' Complaint fails to allege any causes of action against CTC Foundation ................................................................. 7

    B.   Plaintiffs Cannot Maintain a Claim for Breach of Contract ................................. 7

        1.   The October 2017 Version (6th Revision) of the IP Manual applies to the Plaintiffs. ................................................................. 8

        2.   The 4th, 5th, and 6th Revisions of the IP Manual Require Employees to be Active and in Good Standing to Receive any Awards under the IP Reward Program ................................................................. 10

    C.   Plaintiffs Cannot Maintain a Claim for Unjust Enrichment ................................. 12

    D.   Plaintiffs Cannot Maintain a Claim for Intentional Infliction of Emotional Distress ................................................................. 13

        1.   Plaintiffs' Claim for Intentional Infliction of Emotional Distress is barred by the Pennsylvania Workers' Compensation Act ................................. 13

        2.   Plaintiffs' Have Not Alleged Extreme and Outrageous Conduct ............ 14

    E.   Plaintiffs' Claims for Punitive Damages and Attorneys' Fees ............................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. Lowe's Home Ctrs., Inc.*,
   346 Fed. Appx. 816 (3d Cir. 2009) .......................................................................14

*Allergino v. Conway E&S, Inc.*,
   2010 WL 3943939 (W.D. Pa. Oct. 6, 2010) ...........................................................17

*Andrews v. City of Philadelphia*,
   895 F.2d 1469 (3d Cir. 1990) ................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................6, 7, 8

*Bauer v. Pottsville Area Emergency Med. Servs., Inc.*,
   758 A.2d 1265 (Pa. Super. 2000) ............................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................6, 7

*Blackwell-Murray v. PNC Bank*,
   963 F.Supp.2d 448 (E.D. Pa. 2013) ......................................................................12

*Braun v. Wal-Mart Stores, Inc.*,
   24 A.3d 875 (Pa. Super. 2011) ...............................................................................8

*C.D. Brown & Co. v. Standard Hide Co.*,
   152 A. 557 (Pa. 1930) .............................................................................................9

*Cappuccio v. Pfizer, Inc.*,
   2007 U.S. Dist. Lexis 65098 (E.D. Pa. Aug. 30, 2007) .........................................12

*Caucci v. Prison Health Services, Inc.*,
   153 F.Supp.2d 605 (E.D. Pa. 2011) ........................................................................8

*Chambers v. Montgomery*,
   192 A.2d 355 (Pa. 1963) .......................................................................................17

*Cox v. Keystone Carbon Co.*,
   861 F.2d 390 (3d Cir. 1988) ..................................................................................14

*Feld v. Merriam*,
   485 A.2d 742 (Pa. 1984) .......................................................................................17

*First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*,
   803 F.2d 1308 (3d Cir.1986)..................................................................................11

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..............................................................................6, 8

*Fugarino v. Univ. Servs.*,
   123 F. .................................................................................................................14

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010)..........................................................................................16

*Johnson v. Hyundai Motor Am.*,
   698 A.2d 631 (Pa. Super. 1997).......................................................................16

*Lane v. Cole*,
   88 F. Supp.2d 402 (E.D. Pa. 2000) ..................................................................14

*Laneve v. Latrobe Steel Co.*,
   2015 WL 4911824 (W.D. Pa. Aug. 17, 2015) .................................................14

*Lenhart v. Huntington Ins., Inc.*,
   2016 WL 3522043 (W.D. Pa. June 8, 2016)....................................................12

*Matczak v. Frankford Candy and Chocolate Co.*,
   136 F. 3d 933 (3d Cir. 1997)............................................................................13

*McComb v. Morgan Stanley & Co.*,
   2007 WL 152664 (W.D. Pa. Nov. 19, 2007) ...................................................13

*Mozzo v. Progressive Ins. Co.*,
   2015 WL 56740 192 (E.D. Pa. Jan. 5, 2015)...................................................16

*Northridge Vill., LP v. Travelers Indem. Co. of Conn.*,
   2016 WL 7428211 (E.D. Pa. Jan. 21, 2016)....................................................16

*Podesta v. Hanzel*,
   648 Fed. Appx. 213 (3d Cir. 2017)...................................................................10

*Ressler v. Jones Motor Co., Inc.*,
   487 A.2d 424 (Pa. Super. 1985).........................................................................9

*Salvio v. Amgen Inc.*,
   2012 WL 517446 (W.D. Pa. Feb. 15, 2012) ....................................................17

*Smith v. Brown*,
   423 A.2d 743 (Pa. Super. 1980)........................................................................17

iv

*Spano v. JP Morgan Chase Bank, N.A.*,
  521 Fed. Appx. 66 (3d Cir. 2013) ....................................................................12

*Strickland v. Univ. of Scranton*,
  700 A.2d 979 (Pa. Super. 1997) .....................................................................14

*Sunshine v. Reassure America Life Ins. Co.*,
  2012 WL 748669 (E.D. Pa. Mar. 6, 2012) ......................................................16

*Tate v. Gus Genetti's Hotel and Restaurant, Inc.*,
  Case No. 6-322, 2006 WL 2990395 (M.D. Pa. Oct. 18, 2006) ............................15

*Thompson v. AT & T Corp.*,
  371 F. Supp. 2d 661 (W.D. Pa. 2005) .............................................................15

*Tisone v. Bill Beradino & Ascent Auto. Grp. LLC*,
  2016 WL 7404556 (W.D. Pa. Dec. 22, 2016) ..................................................14

*Trainer v. Laird*,
  183 A. 40 (Pa. 1936) ......................................................................................9

*Venuto v. Insurance Co. of N. Am.*,
  1998 WL 414723 (E.D. Pa. 1998) ...................................................................8

*Wall Street Aubrey Golf, LLC v. Aubrey*,
  189 Fed. Appx. 82 (3d Cir. 2006) ............................................................10, 11

*Wilson v. Children's Museum of Pittsburgh*,
  Case No. 5-1748, 2006 WL 2529595 (W.D. Pa. Aug. 31, 2006) .........................13

*Wilson v. Darden Restaurants, Inc.*,
  2000 WL 150872 (E.D. Pa. 2000) ...................................................................8

**Statutes**

77 P.S. § 1 et seq. .............................................................................................3, 13

77 P.S. §411 ........................................................................................................14

Pennsylvania Workers' Compensation Act ..................................................3, 6, 13

**Other Authorities**

Fed. R. Civ. P. 11 ..................................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................1, 6

I.       **INTRODUCTION**

Plaintiffs claim that Defendants owe them certain payments pursuant to an Intellectual Property Reward Program based on their development of a coating system for and owned by Concurrent Technologies Corporation ("CTC") during Plaintiffs' employment with CTC. Additionally, Plaintiffs allege Defendants are liable for intentional infliction of emotional distress for the Defendants' alleged mistreatment of Plaintiffs during their employment. Plaintiffs' allegations lack specificity, fail to include the operative documents related to their employment, and are insufficient under Fed. R. Civ. P. 12(b)(6).

A.       **Identification of the Parties and Need for Dismissal of the CTC Foundation.**

CTC is an independent, nonprofit, applied scientific research and development professional services organization. Defendant CTC Enterprise Venture Technologies ("EVC") (improperly referred to as "Enterprise Venture Technologies") is a for-profit, wholly-owned affiliate of CTC that transfers advanced technologies designed and created by others to the marketplace. Defendant Concurrent Technologies Corporation Foundation is the philanthropic arm of CTC, serving the public by providing information about emerging technologies and donating to charitable organizations. Unless otherwise stated, CTC and EVC are collectively referred to as CTC (despite their status as separate entities; they work together as affiliates often do).

At the outset, CTC notes that Plaintiffs' Complaint does not include any specific allegations against or otherwise explain the involvement of CTC Foundation in this dispute.[1] The

---

[1] Counsel for CTC requested that Plaintiffs dismiss CTC Foundation since it has no involvement with the IP Reward Program. Counsel for Plaintiffs declined to do so, claiming (without factual support) that CTC Foundation is "directly involved in assignments of CTC's intellectual property" (which is not true). Plaintiffs make no such allegations against CTC Foundation in their Complaint. CTC respectfully requests that Plaintiffs provide a good faith basis consistent with Fed. R. Civ. P. 11 explaining their factual basis to include CTC Foundation as a party in this lawsuit in their response to this Motion.

Court should dismiss CTC Foundation as a party.  There is simply no good faith basis for naming this philanthropic foundation.

**B.      Plaintiffs Are Subject to IP Agreements and Are At-Will Employees.**

Plaintiffs, as former employees of CTC, developed a cost-efficient coating system for military vehicles (the "TALON Invention").  *Id*. at ¶ 16.  CTC maintains a manual entitled "Intellectual Property at CTC:  Its Creation, Protection, & Transfer" (the "IP Manual").  *Id*. at ¶17.  The IP Manual contains a section entitled "CTC Intellectual property Reward Program" (the "IP Reward Program").  *Id*.  The IP Reward Program outlines the circumstances under which active employees may receive certain incentive payments for the development and sale of intellectual property.  *Id*.  CTC modified the IP Manual and the IP Reward Program numerous times throughout Plaintiffs' employment, and Plaintiffs do not dispute that they received copies of the updated IP Manual.  *Id*. at ¶¶ 26, 30.  The 4th, 5th, and 6th versions of the IP Manual are attached hereto and marked as Exhibits 1, 2, and 3, respectively. Plaintiffs also signed the attached agreements, which form the basis of their obligations to CTC and EVC.  *See* Plaintiffs' Confidentiality Agreements attached hereto and collectively marked as Exhibit 4.

**C.      The IP Manual Determines Awards.**

Regardless of the IP Manual at issue, CTC, at all relevant times, required employees to be **active and in good standing** in order to receive any inventive payments under the IP Reward Program. *Id*. at ¶ 20.  All versions of the IP Manual prohibit Plaintiffs from receiving any incentive payments under the IP Reward Program because they were not active employees in good standing at the time any such alleged awards became due and payable.[2] As a result, Plaintiffs cannot maintain causes of action for breach of contract or unjust enrichment.

---

[2] Although CTC does not raise this issue for purposes of its Motion to Dismiss, CTC also disputes whether any payments would be owed regardless of Plaintiffs' employment status as the TALON

Additionally, with respect to Plaintiffs' claims for intentional infliction of emotional distress ("IIED"), any such claims are barred by the Pennsylvania Workers' Compensation Act as they arise out of Plaintiffs' employment with Defendants.  77 P.S. § 1 et seq.  Furthermore, Plaintiffs have failed to allege any extreme or outrageous conduct by CTC in support of this cause of action.  Therefore, Plaintiffs' IIED claim also fails.

Lastly, Plaintiffs' Complaint fails to allege sufficient facts or causes of action to support their claims for punitive damages and attorneys' fees.  Accordingly, this Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

## II.    FACTUAL BACKGROUND AS SET FORTH IN THE COMPLAINT

### A.    Plaintiffs' Employment with CTC

CTC hired Brian Albright ("Albright") on September 16, 1994.  Pls. Compl. at ¶ 12. Albright worked for CTC in its Johnstown, Pennsylvania facility from September 16, 1994 through December 31, 2009.  *Id*.  From January 1, 2010 until June 30, 2018, Albright worked for CTC in its Huntsville, Alabama facility.  *Id*.  On July 1, 2018, Albright transferred to EVC and remained at the Huntsville, Alabama facility until his termination on May 6, 2020, following Applied Research Associates' ("ARA") acquisition of the Huntsville, Alabama facility.  *Id*. at ¶¶ 12, 55. CTC hired Richard Newman ("Newman") on May 12, 2008 in its Huntsville, Alabama facility. *Id*. at ¶ 13.  Newman transferred to EVC on June 30, 2018 and remained at the Huntsville, Alabama facility until his termination on May 6, 2020, following ARA's acquisition of the facility.  *Id*. ¶¶ 13, 55.  EVC hired Jacob Mullins ("Mullins") on November 18, 2015 in its Huntsville, Alabama facility.  *Id*. at ¶ 14.  Mullins remained at the Huntsville, Alabama facility until his termination on

---

invention has yet to generate any fees or royalties above and beyond the costs associated with the invention.  Again, while Plaintiffs attempt to allege that fees are owed, they fail to provide any factual basis, ignore the plain requirements of the IP Manual and fail to address the costs associated with the Talon development and production, which are part of any calculation.

May 6, 2020, following ARA's acquisition of the facility. *Id*. at ¶ 14, 55.   (Interestingly, despite Albright, Newman, and Mullins being involved with the ARA acquisition, they never raised any issues about any alleged monies owed to them and do not allege raising the issue at the time of ARA acquisition.)

### B.   The TALON Invention

Plaintiffs and others (the "TALON Team") developed the TALON Invention in or around the fall of 2016 while working on the Ground Vehicle Coating Program (GVCS) project. *Id*. at ¶ 16.   In connection with this project, the TALON Team also created a low-cost solution to make the TALON Invention cost effective enough for use by the United States Military. *Id*.   The TALON Team worked alongside CTC's Vice President Dr. Vicki Barber and the CTC Intellectual Property Committee (the "IP Committee") to complete the necessary forms to classify the TALON Invention as a trade secret and to seek approval for acceptance into CTC's IP Reward Program. *Id*.

### C.   The IP Manual and IP Reward Program

At the time the Plaintiffs developed the TALON invention, the 4th Revision of the IP Manual (dated January 2014) was in effect. *Id*. at ¶ 17; *see also* Ex. 1.   Although the IP Manual only referred to patents, the IP Committee agreed to treat the TALON Invention in the same manner as a patent. *Id*.   Plaintiffs allege that Michael Tims "assured" them that the 4th Revision of the IP Manual would apply to the TALON Invention and that Mr. Tims signed an affidavit (the "Tims Affidavit") to that effect, which Plaintiffs attached as Exhibit A. *Id*. at ¶ 17, Ex. A. However, Tims Affidavit makes no assurances as to which Manual will apply to the TALON Invention. *Id*. at Ex. A.   Rather, the Tims Affidavit merely states that the 4th Revision was active as of December 14, 2006 when the IP Committee agreed to treat the TALON Invention in the same manner as patents. *Id*.

The 4th Revision of the IP Manual contains the following language: "To be eligible for an award, an individual must be an active employee, in good standing, of CTC or its affiliate companies." *Id*. at ¶ 20; *see also* Ex. 1.

In October 2017, CTC released the 6th Revision of the IP Manual.[3] *Id*. at ¶¶ 26, 30; *see also* Ex. 3. Plaintiffs acknowledge receipt of this Manual in or around October 2017 through a company-wide email. *Id*. at ¶ 30. The 6th Revision included additional language to clarify how money would be distributed for inactive employees. *See* Ex. 3. In addition to including the eligibility language quoted above, the 6th Revision also provided that "[r]ecipients must be employed by the Company or its affiliates in order to receive incentive compensation associated with this program. *Id*. In those instances where a distribution of a portion of an award would be to an employee or employees who are no longer with the company, their share(s) will be retained by the entity responsible for payment and utilized as determined by senior management." Pls. Compl. at ¶ 26. The 4th, 5th, and 6th Revisions of the IP Manual all include the active employment requirement. *Id*. at ¶ 20, 26; *see also* Exs. 1-3. There were no substantive changes to the chart outlining the reward payments from the 4th Revision to the 5th Revision. Both versions of the IP Manual allowed for up to $2,250 to be paid to a team for the filing of a utility patent (or, in this case, the filing of a trade secret). *Id*. at ¶ 18. In accordance with the IP Manual applicable at the time, the TALON Team (comprised of 5 individuals) received $2,250 ($450 each) in January 2017. *Id*. at ¶ 24.

---

[3] Contrary to allegations in Plaintiffs' Complaint, CTC issued a 5th Revision of the IP Manual dated January 2017. Although Plaintiffs allege this version was never released, all CTC employees, including the Plaintiffs, received notice of the 5th Revision through a company-wide email dated January 3, 2017. A true and correct copy of the e-mail sent to all CTC employees regarding the 5th Revision of the IP Manual is attached hereto as Exhibit 5.

In addition to the language clarifying the distribution of payment for former employees, the 6th Revision of the IP Manual also contained substantive changes to the incentive payments under the Reward Program. *Id*. at ¶¶ 26-27; *see also* Ex. 3. While the $2,250 team reward for the filing of a utility patent remained the same, the 6th Revision reduced the subsequent awards available under the IP Reward Program and clarified that no awards would be made until the invention/trade secret/copyrighted item netted a certain amount. *Id*. at ¶¶ 26-27; *see also* Ex. 3.

As outlined below, this Court can make a determination as a matter of law as to which version of the IP Manual applies to the Plaintiffs. Furthermore, regardless of which version applies, all versions contain an active employment requirement in order for a team member to receive any awards. As a result, Plaintiffs are not entitled to any awards under the IP Reward Program by virtue of the termination of their employment on May 6, 2020.

### D.     Plaintiffs' Alleged Intentional Infliction of Emotional Distress

In addition to claiming they are entitled to awards under the IP Reward Program, Plaintiffs further allege that CTC is liable for IIED for its alleged mistreatment of the Plaintiffs. *Id*. at ¶ as will be discussed further below, this claim is barred by the Pennsylvania Workers' Compensation Act and Plaintiffs have failed to allege any conduct by CTC that rises to the "extreme and outrageous" standard for IIED claims.

## III.     LEGAL STANDARD

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citations omitted). In deciding a motion to dismiss, the court "must accept the complaint's well-pleaded facts as true but may disregard any legal

6

conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.     ARGUMENT

### A.     Plaintiffs' Complaint fails to allege any causes of action against CTC Foundation

Plaintiffs named CTC Foundation as a defendant in this matter; however, Plaintiffs' Complaint does not include any factual allegations against CTC Foundation.  Plaintiffs mention CTC Foundation only one time in the body of the Complaint during their introductory paragraphs identifying the parties.  The Plaintiffs do not allege that CTC Foundation employed them or breached any obligation owed to them.  Plaintiffs do not allege what involvement, if any, CTC Foundation had in the development and protection of the TALON Invention and/or any the rewards paid in connection with it.  Plaintiffs' Complaint fails to plead any factual content that would permit this Court to draw a reasonable inference that CTC Foundation is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 664; *Twombly*, 550 U.S. at 570.  Therefore, this Court should dismiss CTC Foundation as a defendant with prejudice.

### B.     Plaintiffs Cannot Maintain a Claim for Breach of Contract

As a matter of law, Plaintiffs are subject to the October 2017 Version (6th Revision) of the IP Manual which (i) like the 4th and 5th Revisions, contains an active employment requirement, (ii) clarifies that any money that would have been owed to them is to be retained by CTC, and (iii) modifies the incentive payment terms to require net income over a certain threshold prior to the issuance of any awards.  Even pursuant to the January 2014 Version (4th Revision) of the IP Manual, Plaintiffs' Complaint nevertheless fails because of the active employment requirement included in all versions.  Regardless of which IP Manual applies, Plaintiffs are not active

employees and are, therefore, not eligible to receive any payments under the IP Reward Program for the sales alleged in their Complaint. Therefore, this Court dismiss Count I of Plaintiffs' Complaint, with prejudice.

### 1.    The October 2017 Version (6th Revision) of the IP Manual applies to the Plaintiffs.

The Court is under no obligation to accept as true Plaintiffs' legal conclusion that the 4th Revision of the IP Manual applies to this dispute. *Fowler*, 578 F.3d at 210; *Iqbal*, 556 U.S. at 663. Furthermore, the Court can determine which version of the IP Manual applies based solely on the allegations in Plaintiffs' Complaint. Plaintiffs do not dispute that they remained employed with CTC through May 2020. Pls. Compl. at ¶¶ 12-14. Plaintiffs also acknowledge the release and their receipt of the October 2017 6th Revision of the IP Manual.[4] *Id*. at ¶¶ 26, 30.

The law in Pennsylvania is well-established that an employee demonstrates his/her acceptance of revisions to an employer's policies, manuals, and handbooks by virtue of the employee's continued employment. *See Braun v. Wal-Mart Stores, Inc.,* 24 A.3d 875, 940 (Pa. Super. 2011) (provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties); *Bauer v. Pottsville Area Emergency Med. Servs., Inc.,* 758 A.2d 1265, 1269 (Pa. Super. 2000) (same); *Wilson v. Darden Restaurants, Inc.*, 2000 WL 150872 at *3 (E.D. Pa. 2000) (employee who continued working after receipt of a dispute resolution procedure adopted by company after the start of her employment was bound by the policy); *Venuto v. Insurance Co. of N. Am.*, 1998 WL 414723 at *5 (E.D. Pa. 1998) ("[A]n employee's decision to continue working with an employer for a substantial period of time after the imposition of a new policy demonstrates acceptance of its terms."); *Caucci v. Prison Health*

---

[4] Plaintiffs complain that no one explicitly advised them that the revised version would apply to them and that CTC advised its employees of the revised manual by sending a "bulk email" but do not dispute their receipt of the revised version of the IP Manual. Pls. Compl. at ¶ 30.

*Services, Inc.*, 153 F.Supp.2d 605, 611 (E.D. Pa. 2011) ("In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms.  The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required.") (Internal citations omitted).

By acknowledging receipt of the 6th Revision of the IP Manual and continuing their employment ***for more than two years thereafter***, Plaintiffs signified their acceptance of its terms. Plaintiffs cannot now repudiate their acceptance after failing to raise any challenges to the updates and modifications at the time of implementation.  *See Trainer v. Laird*, 183 A. 40 (Pa. 1936) (holding that an employee in an employment at will relationship who did not object to successive reduction in his wages could not thereafter repudiate acceptance); *Ressler v. Jones Motor Co., Inc.*, 487 A.2d 424, 429 (Pa. Super. 1985) ("[T]he law of this Commonwealth permits an employer to reduce the salary of an employee hired at will where the employee acquiesces in or agrees to the change."); *C.D. Brown & Co. v. Standard Hide Co*., 152 A. 557, 558 (Pa. 1930) ("The waiver of a right or forbearance to exercise the same is a sufficient consideration for a promise made on account of it.").

Plaintiffs' failure to raise this issue for multiple years following the release of the 6th Revision of the IP Manual prohibits them from now claiming that a prior version of the IP Manual applies.  As a result, the October 2017 version of the IP Manual applies to this dispute.  As acknowledged by the Plaintiffs, the October 2017 version of the IP Manual contains the active employment requirement ***and*** further clarifies the distribution of funds for former employees by providing that "[r]ecipients must be employed by the Company or its affiliates in order to receive incentive compensation associated with this program.  In those instances where a distribution of a portion of an award would be to an employee or employees who are no longer with the company,

their share(s) will be retained by the entity responsible for payment and utilized as determined by senior management." Pls. Compl. at ¶¶ 20, 26, 28; *see also* Ex. 3. Therefore, Plaintiffs are subject to the terms of the October 2017 IP Manual and, by virtue of its active employment requirement, are prohibited from receiving any awards under the IP Reward Program.

> ## 2. The 4th, 5th, and 6th Revisions of the IP Manual Require Employees to be Active and in Good Standing to Receive any Awards under the IP Reward Program

Even assuming *arguendo* that Plaintiffs are correct about the applicable version of the IP Manual, this is of no consequence. All versions of the IP Manual contain the following language: "To be **eligible for an award**, an individual must be an active employee, in good standing, of CTC or its affiliate companies." Plaintiffs' Complaint acknowledges that the IP Manual includes this language. *See* Pl. Compl. at ¶ 20. In a desperate attempt to escape applicability of this requirement, Plaintiffs endeavor to persuade this Court to interpret the words "eligible" and "award" in a manner that is inconsistent with the plain meaning of those terms. Plaintiffs disingenuously allege that this language does **not** require active employment for payments made under the IP Rewards Program; rather, Plaintiffs seemingly claim this language only requires active employment for the *initial* payment under the IP Reward Program or perhaps only for initial consideration for participation in the IP Reward Program.[5] *Id*. at ¶ 22.

When interpreting contracts, Pennsylvania Courts "apply the traditional contract principle that when the language of a contract is clear and unambiguous on its face, [courts] must give effect to that plain meaning as a reflection of the intent of the parties." *Podesta v. Hanzel*, 648 Fed. Appx. 213, 217 (3d Cir. 2017) (citations omitted). A court is not authorized to "construe a contract

---

[5] CTC does not fully understand what Plaintiffs' argument is with respect to this language as they appear to both dispute and acknowledge the active employment requirement for awards paid under the IP Reward Program. *See* Pls. Compl. at ¶¶ 20, 23, 28, 29.

in such a way as to modify the plain meaning of its words, under the guise of interpretation." *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir. 2006). "The court should…avoid ambiguities, if the plain language of the contract permits…[and] ***should not torture the language…to create ambiguities***." *Id*. (emphasis added); citing *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co*., 803 F.2d 1308, 1311 (3d Cir.1986).

Merriam-Webster defines "eligible" (adj.) as "qualified to participate or be chosen". *Eligible, Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/eligible (2021). Synonyms for "eligible" include "able" or "qualified". *Id.* Merriam Webster defines "award" (n.) as "something that is conferred or bestowed especially on the basis of merit or need." *Award*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/award (2021). Synonyms of "award" include "accolade" or "prize". In this instance, the award is any payment received pursuant to the IP Reward Program. Thus, the Court should interpret the phrase "eligible for an award" to mean "qualified for a payment." Using these definitions, the IP Manual requires that Plaintiffs be active employees in good standing to be qualified for any payment under the IP Reward Program. Such terms are common in many bonus programs, award incentive programs, and other compensation programs to ensure that employees not only perform but maintain employment.

Plaintiffs acknowledge that they were not active employees as of February 2021, when the United States allegedly awarded contracts to ARA for the TALON Invention. Pls. Compl. at ¶¶ 12-14, 62. Plaintiffs also seemingly acknowledge that the 4th Revision of the IP Manual requires recipients to be actively employed to be eligible to receive any awards under the IP Reward Program. *Id.* at ¶ 29 ("Thus, in the 4th rev. [IP Manual]…what was stated was that a recipient must

be employed by the Company to be **eligible** for the IP Award.") (Emphasis in original).  Therefore, the Court must refrain from "torturing" the plain language of the IP Manual to give it Plaintiffs' desired meaning.

All versions of the IP Manuals contain the clear and unambiguous "active employment" requirement.  Pennsylvania courts have confirmed that similar language operates to exclude former employees from participating in similar bonus or commission-type programs.  *See e.g. Blackwell-Murray v. PNC Bank*, 963 F.Supp.2d 448, 470 (E.D. Pa. 2013) (granting employer's motion for summary judgment because, *inter alia*, employee was not employed by the employer at the time the claimed bonuses became due as required by the employer's payment schedule); *Cappuccio v. Pfizer, Inc.*, 2007 U.S. Dist. Lexis 65098 (E.D. Pa. Aug. 30, 2007) (granting employer's motion for summary judgment because plaintiff had voluntarily resigned from employment prior to payout and, thus, forfeited his incentive bonus pursuant to the terms of the incentive plan); *Lenhart v. Huntington Ins., Inc.*, 2016 WL 3522043 (W.D. Pa. June 8, 2016), report and recommendation adopted, 2016 WL 3579050 (W.D. Pa. June 28, 2016) (granting motion to dismiss where contract provided that "[n]o Award will be paid to a Participant who is not employed by the Corporate or a Subsidiary on the day the Award is paid" and court determined that plaintiff had not earned bonus under the contract because plaintiff was not employed at the time the employer issued payment).

As such, Plaintiffs are not entitled to any awards under the IP Reward Program regardless of which version applies.  Therefore, the Court should dismiss Count I of Plaintiffs' Complaint.

### C.    Plaintiffs Cannot Maintain a Claim for Unjust Enrichment

For the same reasons outlined above, Plaintiffs cannot establish an unjust enrichment claim.  Additionally, Plaintiffs cannot maintain an unjust enrichment claim because their claims arise out of the existence of an alleged written agreement.  *See* Pls. Compl. at ¶ 80-82; *Spano v. JP Morgan Chase Bank, N.A.*, 521 Fed. Appx. 66, 71 (3d Cir. 2013) ("Unjust enrichment is a

quasi-contractual remedy that is imposed for reasons of justice, to prevent unconscionable benefit or advantage" and "will not stand when an express contract exists concerning the identical subject matter.") (Internal quotations and citations omitted).

In the body of their unjust enrichment claim, Plaintiffs explicitly allege that "Defendants are retaining all benefits of the TALON Invention conferred upon Defendants without providing the due compensation due to Plaintiffs ***pursuant to the CTC IP Reward Program Agreement*** entered into between Plaintiffs and Defendants on December 15, 2016." Pls. Compl. at ¶ 81 (emphasis added). Therefore, this dispute concerns an express, written agreement and this Court must dismiss Plaintiffs' Unjust Enrichment claim. Plaintiffs' very allegations contradict any notion that an unjust enrichment claim can withstand the motion to dismiss stage.

### D.    Plaintiffs Cannot Maintain a Claim for Intentional Infliction of Emotional Distress

Plaintiffs' claim for intentional infliction of emotional distress should be dismissed for two reasons. First, Plaintiffs' claim is barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act. Second, Plaintiffs' have not alleged conduct which is extreme and outrageous in character.

### 1.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress is barred by the Pennsylvania Workers' Compensation Act

With limited exception, the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 *et seq*., (the "PWCA") preempts the plaintiffs' claims for intentional infliction of emotional distress ("IIED") that arise out of an employment relationship. The PWCA "is the exclusive remedy for employees asserting [IIED] claims based on alleged discriminatory treatment by employers." *See Wilson v. Children's Museum of Pittsburgh*, Case No. 5-1748, 2006 WL 2529595 at * 8 (W.D. Pa. Aug. 31, 2006) (discussing preemption of IIED claims), citing, *Matczak v. Frankford Candy and Chocolate Co*., 136 F. 3d 933, 940 (3d Cir. 1997); *see also McComb v. Morgan Stanley & Co.*,

13

2007 WL 152664 (W.D. Pa. Nov. 19, 2007) ("In Pennsylvania, the PWCA is the exclusive source of an employer's liability for injuries arising out of an employee's employment."); 77 Pa. Const. Stat. § 481(a).  Thus, the general rule is that the PWCA precludes employees from asserting claims of intentional infliction of emotional distress against their employers. *See Ahmed v. Lowe's Home Ctrs., Inc.*, 346 Fed. Appx. 816, 821 (3d Cir. 2009) ("The PWCA bars IIED claims that arise out of an employment relationship.") (citations omitted); *Tisone v. Bill Beradino & Ascent Auto. Grp. LLC*, 2016 WL 7404556 (W.D. Pa. Dec. 22, 2016) (same).

The only exception to this rule is not applicable here.  The exception would require Plaintiffs to show that CTC's alleged conduct was "motivated by personal reasons as opposed to generalized contempt or hatred **and** did not arise in the course of employment."  *Ahmed*, 346 Fed. Appx. at 821 (emphasis added); citing 77 P.S. §411; *Fugarino v. Univ. Servs.*, 123 F. sup.2d 838, 844 (E.D. Pa. 2000).  Plaintiffs' explicitly allege throughout their Complaint that all of the alleged harassment and misconduct they experienced arose in the course of their employment.  *See* Pl. Compl. at ¶¶ 42, 67-71.  Therefore, this Court should dismiss Plaintiffs claims for IIED.

### 2.    Plaintiffs' Have Not Alleged Extreme and Outrageous Conduct

Plaintiffs' claims also fail because they have not alleged any extreme and outrageous conduct by CTC.  Plaintiffs allege Defendants subjected them to false accusations, demotions, general work insecurity, and a loss of benefits and other changes to the terms and conditions of their employment.  *See* Pl. Compl. at ¶¶ 42, 67-68.  "Extreme and outrageous conduct is conduct which is so outrageous in character, and so extreme in degree, ***as to go beyond all possible bounds of decency***, and to be regarded as atrocious, and utterly intolerable in civilized society." *Laneve v. Latrobe Steel Co.*, 2015 WL 4911824 at *7 (W.D. Pa. Aug. 17, 2015) (emphasis added); citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).  "***Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim***." *Lane v.*

14

*Cole*, 88 F. Supp.2d 402, 406 (E.D. Pa. 2000) (emphasis added); citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) ("It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.").

Plaintiffs cite the following alleged conduct in support of their IIED claim:

- Accusations that Plaintiff Newman intentionally destroyed classified information and completion of an investigation following the same; *See* Pl. Compl. at ¶ 47.

- Accusations that Mr. Mullins intentionally held back certain materials or threw away materials rather than sending them to the Johnstown facility; *Id*. at ¶ 52;

- Demotions, lack of consideration for management positions, salary cuts, and loss or change in other benefits; *Id*. at ¶¶ 42, 48-49, 67-68;

- General allegations of harassment and hostile work environment; *Id*. at ¶¶ 41-43, 49, 67-68, 85.

- General job insecurity and the impression that Plaintiffs were "not welcome" and that CTC was "trying to get [them] to leave the Company." *Id*. at ¶¶ 57, 68.

This is not conduct which, if believed, goes "beyond all possible bounds of decency,… [so as to] be intolerable in a civilized community."  *Tate v. Gus Genetti's Hotel and Restaurant, Inc.,* Case No. 6-322, 2006 WL 2990395 at * 2 (M.D. Pa. Oct. 18, 2006) (granting an employer's motion to dismiss an intentional infliction of emotional distress claim where the employee claimed she was fired, after returning from her honeymoon, because she was an epileptic), (citing also, *Thompson v. AT & T Corp.,* 371 F. Supp. 2d 661, 683-84 (W.D. Pa. 2005)) (granting an employer's motion to dismiss an intentional infliction of emotional distress claim where the employee claimed profanity and verbal abuse by a supervisor, a failure to accommodate, a demotion, threats that plaintiff "shape up or ship out", teasing, and other "rude, callous, and insensitive" behavior that did "not reach the *extreme* level of outrageous required" for an IIED claim) (emphasis in original). "Such a designation must be reserved only for the most egregious conduct which cannot be

tolerated in a civilized society."  *Tate*, 2006 WL 2990395 at * 3; *see also Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3d Cir. 1990) (finding that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress").

Plaintiffs do not allege any conduct by CTC that meets the extreme and outrageous standard.  Therefore, the Court should dismiss Count Three of Plaintiffs' Complaint for Intentional Infliction of Emotional Distress.

### E.    Plaintiffs' Claims for Punitive Damages and Attorneys' Fees

Plaintiffs seek punitive damages and attorneys' fees in connection with their claims for breach of contract, unjust enrichment, and IIED.  Claims for breach of contract and unjust enrichment cannot not provide a basis for recovery of punitive damages and attorneys' fees. *Northridge Vill., LP v. Travelers Indem. Co. of Conn*., 2016 WL 7428211 (E.D. Pa. Jan. 21, 2016); quoting *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. 1997) ("The law of Pennsylvania clearly provides…that punitive damages are not recoverable in an action solely based on breach of contract.");  *see also Mozzo v. Progressive Ins. Co.,* 2015 WL 56740 192, *4 (E.D. Pa. Jan. 5, 2015) ("[A]ttorneys' fees are not available for breach of contract absent express statutory authorization, clear agreement between the parties, or a clear exception."); citing *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242 , 252-53 (2010); *Sunshine v. Reassure America Life Ins. Co.*, 2012 WL 748669 (E.D. Pa. Mar. 6, 2012) ("[Plaintiff] cannot recover punitive damages for his claim of unjust enrichment").

In Pennsylvania, the standard for awarding punitive damages is set out in section 908 of the Restatement (Second) of Torts, which permits an award of punitive damages "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  In evaluating a request for punitive damages, "one must look to the act itself, together

with all the circumstances, including the motive of the wrongdoers and the relations between the parties." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) quoting *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963).

Punitive damages "are awarded only for outrageous conduct, that is, for acts done with bad motive or with a reckless indifference to the interests of others." *Smith v. Brown*, 423 A.2d 743, 745 (Pa. Super. 1980). As outlined above, the "extreme and outrageous" conduct of which Plaintiffs complaint with respect to their IIED claim is insufficient to support a claim for punitive damages. Even if Plaintiffs' IIED claim survive this Motion—which it should not—Plaintiffs do not offer sufficient facts to support any claim for punitive damages. Instead, Plaintiffs simply allege (without factual support) that they are entitled to punitive damages for CTC's "willful, malicious, and intentional conduct." Pls. Compl. at p. 25.

Plaintiffs' "threadbare recital" of the elements for punitive damages, unaccompanied by supporting factual content, cannot withstand a motion to dismiss. *See Salvio v. Amgen Inc*., 2012 WL 517446 (W.D. Pa. Feb. 15, 2012) (Plaintiff failed to allege any conduct that would rise to the level of seriousness necessary for imposing punitive damages and to satisfy the pleading standard.); *see also Allergino v. Conway E&S, Inc.*, 2010 WL 3943939 at *11 (W.D. Pa. Oct. 6, 2010) (dismissing punitive damages claim where "the factual allegations proffered in support of [plaintiff's] assertions of 'reckless and careless' conduct and 'evil intent and motive' were not sufficient to support a claim for punitive damages.").

Therefore, the Court should dismiss Plaintiffs' claims for punitive damages and attorneys' fees.

Date:  September 7, 2021                    Respectfully submitted,

                                            *s/ Jaime S. Tuite*
                                            Jaime S. Tuite (PA 87566)
                                            jaime.tuite@bipc.com
                                            Marjorie F. Bagnato (PA 313557)
                                            marjorie.bagnato@bipc.com

                                            BUCHANAN INGERSOLL & ROONEY PC
                                            Union Trust Building
                                            501 Grant St., Suite 200
                                            Pittsburgh, PA  15219
                                            Telephone:  412-562-8800
                                            Fax:  412-562-1041

                                            *Attorneys for Defendants*