IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN ALBRIGHT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. 3:21-cv-112 |
| ) | Judge Stephanie L. Haines |
| CONCURRENT TECHNOLOGIES ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

Plaintiffs commenced this action on June 28, 2021 by filing a three-count Complaint (ECF No. 1) against their former employers, Defendants Concurrent Technologies Corporation ("CTC") and Enterprise Ventures Corporation ("EVC"), as well as Defendant Concurrent Technologies Corporation Foundation ("CTC Foundation"). Plaintiffs allege the following counts against Defendants: breach of contract (Count I); unjust enrichment (Count II); and intentional infliction of emotional distress (Count III). In their prayer for relief, Plaintiffs also include a request for punitive damages and attorneys' fees. Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 15) and Memorandum of Law in Support (ECF No. 16) wherein Defendants request the Court to dismiss Plaintiffs' Complaint in its entirety. On September 28, 2021, Plaintiffs filed a Brief in Opposition to the Motion to Dismiss (ECF No. 22), and Defendants filed a Reply Brief (ECF No. 26) in support of their Motion to Dismiss on October 6, 2021. This matter is fully briefed and ripe for disposition.

For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss (ECF No. 15). The Court will grant Defendants' motion as to all claims against CTC Foundation, and CTC Foundation will be dismissed from this matter, without

1

prejudice. The Court will also grant Defendants' motion as to Plaintiffs' IIED claim at Count III, Plaintiffs' claim for punitive damages, and Plaintiffs' claim for attorneys' fees, and these claims will be dismissed with prejudice. However, the Court will DENY Defendants' motion in all other respects.

## I. Background

The following facts are accepted as true for the purpose of the pending motion to dismiss (ECF No. 15):

Plaintiff Brian Albright was employed by CTC in Johnstown, Pennsylvania from September, 1994 through December, 2009, by CTC in Huntsville, Alabama from January, 2010 through June, 2018, and by EVC in Huntsville, Alabama from July, 2018 until May 6, 2020 (ECF No. 1 at ¶¶ 3, 60). Plaintiff Richard Newman was employed by CTC in Huntsville, Alabama from May, 2008 through June, 2018; and then by EVC from July, 2018 until May 6, 2020. *Id.* Plaintiff Jacob Mullins was employed by EVC in Huntsville, Alabama from November, 2015 until May 6, 2020. *Id.*

In 2016, Plaintiffs, along with two other employees, (referred to as the "Technical Team"), invented a proprietary TALON/GVCS/CARC Z coating system (referred to as the "TALON Invention"). According to the Complaint, CTC realized the TALON Invention had the potential to become a very valuable asset that could result in CTC receiving lucrative contracts from the U.S. government with substantial profits realized from future sales of the TALON Invention. *Id.* at ¶ 16. At the time the TALON Invention was developed, the CTC IP Manual, 4th revision ("4th rev. version") was in effect, which contained a CTC Intellectual Property Reward System Program ("IP Reward Program"). This IP Reward Program was "designed to reward individuals and team

contributions for their successful development of intellectual property that may have value to the Company" that resulted in utility patent filings. *Id.* at ¶17.

On December 5, 2016, the Technical Team, including Plaintiffs, was accepted in the IP Reward Program for the TALON Invention, though the CTC Intellectual Property Committee ("IP Committee") decided that the TALON Invention would be kept as a trade secret rather than seeking patent protection. On December 14, 2016, the CTC IP Committee agreed that the IP Reward Program in the 4th rev. version of the IP Manual related to patent rewards would apply to the trade secret TALON Invention. *Id.* at ¶17.

The 4th rev. version of the IP Manual sets forth an award structure based on the development of IP technology. As to eligibility, it provides:

> "To be eligible for an award, an individual must be an active employee, in good standing, of CTC or its affiliate companies. These awards are NOT available to members of the CTC Intellectual Property Committee, unless that member develops a new invention and removes himself/herself from any further evaluation and processing of the idea."

In January, 2017, the Technical Team received checks pursuant to the IP Reward Program in the amount of $2,250.00, or $450.00 for each team member, less taxes. *Id.* at ¶24. In the event the technology was licensed or sold, participants in the program would receive 20% on the first $100,000 in fees or royalty income after deductions for patent costs, 15% on income between $100,000 and $500,000, and 10% on income above $500,000. *Id.* at ¶18.

In October, 2017, a 6th rev. IP Manual ("6th rev. version") was released.[1] *Id.* at ¶26. The 6th rev. version changed the IP Reward Program by reducing the percentage of compensation, making the compensation calculated from the net income after expenses and operating costs, and capping

---

[1] The parties dispute the timing and release of the 5th rev. IP Manual, but this dispute has no bearing on Defendants' pending motion.

the total reward at $50,000.00. *Id.* at ¶27. The 6th ver. also revised the eligibility provision to state:

> "Recipients must be employed by the Company or its affiliates in order to receive incentive compensation associated with this program. In those instances where a distribution of a portion of an award would be to an employee or employees who are no longer with the company, their share(s) will be retained by the entity responsible for payment and utilized as determined by senior management."

Plaintiff Albright contacted Michael L. Tims, Chairman of the CTC IP Committee ("Tims"), to discuss the updated versions of the IP Manual. Plaintiffs plead that Tims stated he believed the changes would not affect the Technical Team's compensation under the IP Reward Program because the program's compensation process was initiated under the 4th rev. version. *Id.* at ¶35. Plaintiffs assert Tims repeatedly assured Plaintiffs that the IP Reward Program as defined in the 4th rev. version was still active with respect to Plaintiffs' receiving award payments in accordance with the IP Reward Program. *Id.* at ¶65. Plaintiffs' Complaint attaches a statement by Tims that provides as follows:

> As the initial instance of securing protection as a trade secret, which was not explicitly defined at that time in the CTC Intellectual Property Reward Program Chapter of the CTC IP Manual, the IP Committee agreed, via committee vote on 14 December 2016, to apply to the inventive team the guidelines within the IP Manual related to patent rewards. At that time Revision 4 of CTC's IP Manual was active. Under this policy the initial IP compensation award payments were made to each of the developers. This process initiated the compensation program cited within CTC Intellectual Property Manual, Revision 4, Chapter 5, CTC Intellectual Property Reward Program by issuing payment of $450.00 per team member in the Spring of 2017.

(ECF No. 1-1).

Based on this assurance, the Technical Team's main efforts then were devoted to making the TALON Invention as profitable as possible. *Id.* at ¶37. With this change in responsibility, CTC's management decided the members of the Technical Team would be moved to Defendant EVC, the for-profit, wholly-owned subsidiary of CTC in its Huntsville, Alabama facility. *Id.* at

4

¶37. After the transfer, Plaintiffs plead that EVC management and personnel were openly hostile to them. Specifically, Plaintiffs allege EVC management pulled highly successful programs from Plaintiff Albright's management and replaced him with managers having no experience or background in these programs, and EVC management made several false accusations of security infractions. *Id.* at ¶41. Plaintiff Newman was eventually demoted, told he would no longer be in management after the next reorganization, and denied the opportunity to apply for internal postings within the company. *Id.* at ¶¶48-49. In addition to harassment, several of the personnel in the TALON group were given salary cuts. *Id.* All members of the TALON group lost their vacation time, retirement plan matching was reduced from 6% to 3% with EVC, and accrued leave was shortened by one week. *Id.* at ¶41.

Plaintiffs decided to remain employed by EVC, and chose not to seek lucrative employment elsewhere, because the reward they would receive under the IP Reward Program from the TALON Invention sales would be significant. *Id.* at ¶¶43-44. Shortly after the move to EVC, Plaintiff Newman also contacted Tims to discuss concerns about whether his transition from CTC to EVC would void their IP Reward Program. *Id.* at ¶45. Tims assured Plaintiff Newman, as he had previously assured Plaintiff Albright, that the move to EVC would not affect the IP Reward Program as to the TALON Invention. *Id.*

In 2020, the environment at EVC became worse after production of the TALON products moved from Huntsville, Alabama to Johnstown, Pennsylvania. *Id.* at ¶53. Plaintiffs contend it seemed their employment with CTC/EVC was not welcome and that management was intentionally trying to get the Plaintiffs to leave the Company. *Id.* at ¶57. Plaintiffs contend that they suffered emotional distress due to the ongoing harassment. *Id.* at ¶68. Because of the emotional stress, Plaintiff Albright was diagnosed with high blood pressure, Plaintiff Mullins had

chronic insomnia, and Plaintiff Newman was diagnosed with irritable bowel syndrome-constipation and developed sleep apnea. *Id.* at ¶¶69-71.

On May 5, 2020, the EVC Huntsville, Alabama office was acquired by Applied Research Associates ("ARA")[2] and Plaintiffs were required to transition over to ARA. *Id.* at ¶60. All EVC personnel, except for Plaintiffs and personnel related to the TALON Invention, remained with EVC. *Id.* Plaintiffs were not offered an option to stay with EVC and had no viable alternative at the time but to transition over to ARA. *Id.* At the time of the transfer, Plaintiffs still believed they would receive compensation for the TALON Invention through the IP Reward Program. *Id.*

Five months after their transition to ARA, Defendants CTC/EVC were awarded a $2.1 million contract for the TALON products. *Id.* at ¶62. After transitioning to ARA, Plaintiffs sent a letter to CTC/EVC through their attorney requesting their award payments as of that date and assurance that their future payments pursuant to the IP Reward Program would be forthcoming. *Id.* at ¶63. Defendants replied that Plaintiffs would receive no future payments pursuant to the IP Reward Program Agreement. *Id.*

Plaintiffs plead that, as of February, 2021, prior to being acquired by ARA, CTC/EVC has been awarded contracts with the United States government directly related to the TALON Invention having a value of approximately $7,000,000, and after the ARA acquisition, CTC/EVC has been awarded contracts with the United States government and Defense contractors that total approximately over $3,100,000 directly related to the TALON Invention. *Id.* at ¶73. Plaintiffs project, based on these initial sales and pending future markets, the overall TALON Invention value is approximately $100,000,000 to $150,000,000 in annual revenue. *Id.* Plaintiffs assert they

---

[2] The parties appear to agree that ARA is a sperate corporate entity with no affiliation with Defendants.

are entitled to the percentage of these sales under the IP Reward Program in the 4th rev. version of the IP Manual, and that Defendants have breached their obligations to Plaintiffs by refusing to pay this compensation.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 664. To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Twombly,* 550 U.S. at 570).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In this regard, legal conclusions must be supported by factual allegations. *Id.*; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth"). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550

7

U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

### III. Analysis

#### A. CTC Foundation

Defendants argue CTC Foundation should be dismissed because Plaintiffs did not include any specific allegations against CTC Foundation in the Complaint. In response, Plaintiffs contend their allegations against CTC and EVC apply equally to CTC Foundation under the theory of "affiliated corporate liability." Plaintiffs contend the actions of CTC and EVC described in the Complaint may be attributed to CTC Foundation because these entities share common ownership, common directors and/or officers, control, policies emanating from a common source, and dependency of operations.

Plaintiffs were never employed by CTC Foundation. No direct allegations are made in the Complaint that would attribute any liability to CTC Foundation. Plaintiffs also do not plead any facts to support that the alleged liability of CTC and EVC can be attributed to CTC Foundation, a separate corporate entity. Accordingly, the Court will grant Defendants' request to dismiss CTC Foundation from this matter. However, this dismissal shall be without prejudice in the event that discovery later supports CTC Foundation should be joined as a party to this matter.

### B. Count I- Breach of Contract

As a preliminary issue, the Complaint does not attach the 4th rev. version, 5th rev. version, or the 6th rev. version of the IP Manual. Rather, Defendants have filed these documents under seal (ECF No. 19) after the Court granted Defendants leave to do so (ECF No. 14). The parties do not dispute the authenticity of these documents, and they both rely on these documents in their filings. Accordingly, the Court finds it is appropriate to consider these documents in ruling on Defendants' pending motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (explaining that the court may consider in ruling on a Rule 12(b)(6) motion "undisputedly authentic documents if the complainant's claims are based upon these documents").

When interpreting a contract, the court first considers the intent of the parties as expressed by the words used in the contract. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 452 (3d Cir. 2006). If those words used in the contract are unambiguous, then, as a matter of law, those words control. *Bohler—Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 92-93 (3d Cir. 2001). The court considers individual terms in the context of their entire contractual provision when determining the intent of the parties. *NorFab Corp. v. Travelers Indem. Co.*, 555 F.Supp.2d 505, 509 (E.D. Pa. 2008). A contract provision "contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense…[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Baran v. George Weston Bakeries, Inc.*, 209 A.3d 488, 2019 Pa. Super. Unpub. LEXIS 44, 2019 WL 126783, at *3 (Pa. Super. Ct. 2019) (citing *Ramalingam v. Keller Williams Realty Grp., Inc.*, 2015 PA Super 172, 121 A.3d 1034, 1046 (Pa. Super. 2015)); *see Welded Constr., L.P. v. Prime NDT Servs. (In re Welded Constr., L.P.)*, 605 B.R. 35, 41 (Bankr. D. Del. 2019).

Defendants argue Plaintiffs' breach of contract claim should be dismissed because they were not active employees of CTC or EVC at the time of the award of the contracts for the TALON products. Under this argument, the phrase "eligible for an award" as used in the 4th rev. version of the IP Manual means "qualified for payment," meaning the IP Manual requires Plaintiffs to be active employees in good standing to be qualified for any payment under the IP Reward Program. Though Defendants argue the 6th rev. version applies to Plaintiffs' claims, they contend that both versions require the recipients of any award to be active employees, and thus Plaintiffs' claims fail under both the 4th rev. version and the 6th rev. version.

Defendants state the Court may rule on which version of the IP Manual applies to Plaintiffs' claims as a matter of law, but Plaintiffs have alleged they were told on several instances by Tims that the 4th rev. version would apply to their rewards from the TALON Invention. Plaintiffs' allegations concerning Tims' representations create a factual dispute that precludes the Court from ruling on this issue at the motion to dismiss stage. Further, the Court must accept this factual allegation as true at this stage and will therefore apply the applicable language in the 4th rev. version to Plaintiffs' claims. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) ("[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (quoting *Iqbal*, 556 U.S. at 679)).

The 4th rev. version of the IP Manual is approximately 40 plus pages long and almost exclusively devoted to guiding employees through the extensive and multi-step process by which an employee may apply for admission into the IP Reward Program. There is very little in the manual defining the relationship between the company and employee after initial acceptance into the program. Plaintiffs interpret the language in the 4th rev. version to mean that, in order to be

eligible for acceptance in the IP Reward Program, an individual had to be an active employee, in good standing. Plaintiffs argue the language of the 4th rev. version only requires "active" employment for the initial payment under the IP Reward Program and/or for initial consideration for participation in the IP Reward Program. They state "eligible" is interpreted as being eligible to receive rewards by being chosen to participate in the IP Reward Program, which they were in 2016.

The 6th rev. version clearly defines that, for employees no longer with the company, their share will be retained by the entity responsible for payment and utilized as determined by senior management. Unlike the 6th rev. version, the 4th rev. version is silent as to the companies' responsibilities for an employee's share of the award in the event the company transfers that employee's employment to another entity. The 4th rev. version, and the record as it stands, is not clear on how the parties intended to handle such a situation.

The Court therefore finds the above cited contract language unclear and arguably ambiguous. Discovery may ultimately prove Defendants' termination of Plaintiffs' employment acts as a complete bar to recovery, but this matter is before the Court on a motion to dismiss, rather than one for summary judgment. Therefore, the issue is whether Plaintiffs have adequately pleaded: 1) that a contract exists between the parties, 2) that Defendants breached that contract, and 3) that Plaintiffs incurred resulting damages. The parties do not appear to dispute the existence of a contract, and at this time, there is insufficient information before the Court to determine conclusively that Plaintiffs are not entitled to their claimed compensation as a matter of law. The Court will therefore deny Defendants' motion to dismiss as to Count I.

### C. Count II- Unjust Enrichment

Defendants assert Plaintiffs may not state a claim for unjust enrichment as a matter of law because they are barred from recovery under either version of the IP Manual, and they fail to plead

11

facts sufficient to state an unjust enrichment claim (ECF No. 26 at 6). Plaintiffs respond that their unjust enrichment claim is pleaded in the alternative and sufficiently supported by factual allegations.

"[A] party with an otherwise adequate remedy at law cannot claim unjust enrichment. However, as there are sometimes inadequacies in contractual remedies at law, it is widely accepted practice to pursue unjust enrichment in the alternative at the pleading stage." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 275 (W.D. Pa. 2021). The elements necessary to state a claim for unjust enrichment in Pennsylvania are: 1) benefits conferred on defendant by plaintiff; 2) appreciation of such benefits by defendant; and 3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendants to retain the benefit without payment of value. *Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 97, 666 A.2d 327, 328 (1995). "The most important factor… is whether the enrichment of the defendant is *unjust*." *Walter v. Magee–Womens Hosp.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005) (quoting *Schenck*, 666 A.2d at 328). Whether an enrichment is unjust is a factual question to be determined on a case-by-case basis. *Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 430, 443 (W.D. Pa. 2020).

In this case, while the parties do not presently dispute the existence of a contract, Defendants' principal argument is that the contract does not entitle Plaintiffs to any compensation payments. As previously stated, Plaintiffs' entitlement to damages under a breach of contract theory will be better resolved following discovery.

Defendants also argue Plaintiffs' unjust enrichment claim fails because their work as at-will employees on the TALON products do not confer a benefit on Defendants that it would be unjust for Defendants to retain. Regarding the elements of their unjust enrichment claim, Plaintiffs assert they adequately pleaded they conferred a benefit to Defendants due to their obligation to

assign all of their inventions to Defendants; that Defendants only had knowledge and ownership of the TALON Invention because of Plaintiffs' development and continued refinement of the TALON Invention; and that Plaintiffs have not been given their applicable reward payments pursuant to Defendants' obligation under the IP Reward Program as provided in 4th rev. version. At this stage, it is not clear whether Plaintiffs' actions to promote and develop the TALON Invention were as part of their day-to-day duties or as part of their participation in the IP Reward Program. Assuming Plaintiffs' allegations to be true, and construing them in the light most favorable to Plaintiffs as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied Plaintiffs have stated a plausible claim of unjust enrichment.

### D. Count III- IIED

Defendants argue Plaintiffs' IIED claim is barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act (the "PWCA"). The PWCA provides that the liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees. 77 P.S. §481(a). The purpose of the PWCA is to "'provide employees with compensation for injuries sustained within the scope of their employment…without the burden of establishing fault.'" *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa. Super. 2000) (quoting *Snyder v. Specialty Glass Products, Inc.*, 658 A.2d 366, 369 (Pa. Super. 1995)). The PWCA defines "injury" and or "personal injury" as "an injury to an [employee], regardless of [her] previous physical condition arising in the course of [her] employment and related thereto. 77 P.S. § 411(1).

A limited exception exists under the PWCA for a "personal animus" or "third-party attack." The PWCA provides that the term injury "shall not include an injury caused by an act of a third person intended to injure the [employee] because of reasons personal to [her], and not

directed against [her] as an [employee] or because of [her] employment." *Id.* Courts have explained that where the animosity develops because of a work-related dispute, then it is employment related and the employee's only remedy is under the PWCA. *See Abbott*, 758 A.2d at 1224. There is a rebuttable presumption that the injury is work related where it occurs on the premises of the employer. *Id.*

Defendants also argue that, even if taken as true, their conduct does not rise to the level of "extreme and outrageous." To recover for intentional infliction of emotional distress, a plaintiff must show that defendant's conduct was (1) extreme and outrageous; (2) intentional or reckless; and (3) causes severe emotional distress. *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989). The standard for "extreme and outrageous" conduct is very high under Pennsylvania law. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). "Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.*

Even construing the allegations in the Complaint in the light most favorable to Plaintiffs, Defendants' actions do not fit within the personal animosity exception. Plaintiffs' allegations of the harassment and hostility from (unnamed) EVC management and Plaintiffs' loss of salary and benefits are work related and clearly based on their employment with EVC. Though Plaintiffs plead these actions caused them to suffer from medical conditions, ultimately these claims are barred by the exclusivity provision of the PWCA. As the Court will dismiss Plaintiffs' IIED claim on this basis, it need not address Defendants' argument that Plaintiffs failed to meet the requisite "extreme and dangerous" standard.

### E. Punitive Damages and Attorneys' Fees

Lastly, Defendants contend Plaintiffs' claims for punitive damages and attorneys' fees should be dismissed. As to punitive damages, because Plaintiffs' breach of contract and unjust enrichment claims are the only remaining substantive claims, the Court finds that it is appropriate to dismiss Plaintiffs' claim for punitive damages. *DiGregorio v. Keystone Health Plan E.*, 2003 PA Super 509, 840 A.2d 361, 370 (Pa. Super. Ct. 2003) (plaintiff cannot recover punitive damages for an action sounding solely in breach of contract); *Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 680 n. 7 (E.D. Pa. 2012) (unjust enrichment is a "quasi-contract" remedy for which punitive damages are unavailable); *Riley v. Timmons Constr. LLC*, Civil Action No. 21-286, 2022 U.S. Dist. LEXIS 35044, at *27 (W.D. Pa. Feb. 28, 2022) (dismissing punitive damages claim when breach of contract and unjust enrichment were only remaining substantive claims).

Regarding Plaintiffs' request for attorneys' fees, Defendants correctly state that Plaintiffs have failed to address any grounds for entitlement to attorneys' fees. "[I]n the absence of an agreement or statute providing for attorneys' fees, the American rule is that 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *O'Brien v. Travelers Prop. & Cas. Ins. Co.*, 65 F. App'x 853, 856 (3d Cir. 2003) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). This rule holds true in Pennsylvania "unless there is express statutory authorization, a clear agreement of the parties or some other established exception." *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) (quoting *Mosaica Academy Charter School v. Com. Dept. of Educ.*, 813 A.2d 813, 822 (2002)); *Best Med. Int'l v. Buchanan Ingersoll & Rooney PC*, Civil Action No. 20-1077, 2021 U.S. Dist. LEXIS 49048 (W.D. Pa. Mar. 15, 2021) (granting motion to dismiss claim for attorneys' fees in breach of contract

action). Because Plaintiffs have not identified any statutory or contractual fee shifting provisions, they cannot seek recovery of attorneys' fees with respect to their claims in this matter.

IV.     **Conclusion**

At this stage in the proceedings, Plaintiffs need only set forth sufficient facts to state a claim to relief that is plausible on its face and allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. Here, the Complaint sets forth breach of contract and unjust enrichment claims against Defendants. However, the Court finds Plaintiffs' IIED claim against Defendants is barred by the Pennsylvania Workers' Compensation Act, and the Court will grant Defendants' request to dismiss this claim. Plaintiffs' claim for punitive damages is likewise dismissed as such damages are not available under the remaining breach of contract and unjust enrichment claims. Plaintiffs have also failed to state any basis for entitlement to attorneys' fees, and the Court will dismiss this claim. Additionally, as Plaintiffs fail to state any claim against CTC Foundation, CTC Foundation will be dismissed without prejudice as a defendant in this matter. Defendants are directed to file their answer and affirmative defenses on or before October 21, 2022.

An appropriate Order follows.

DATE: September 30, 2022

_____
Stephanie L. Haines
United States District Judge